UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMAESHI NWOZUZU, | No. 2:24-cv-01518 SCR P |
| Plaintiff, | |
| v. | ORDER |
| DANIEL E. CUEVA, et al., | |
| Defendants. | |

Plaintiff is incarcerated in state prisoner and proceeding pro se with a civil rights action under 42 U.S.C. § 1983. Plaintiff has filed a first amended complaint ("FAC") that is before the undersigned for screening under 28 U.S.C. § 1915A. For the reasons set forth below, the undersigned finds that the FAC fails to state any cognizable claims for relief. Plaintiff will be given leave to file an amended complaint.

**STATUTORY SCREENING**

The court is required to screen complaints brought by prisoners seeking relief against "a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In performing this screening function, the court must dismiss any claim that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." Id. § 1915A(b). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325

1

1    (1989). The court may dismiss a claim as frivolous if it is based on an indisputably meritless

2    legal theory or factual contentions that are baseless. Neitzke, 490 U.S. at 327. The critical

3    inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and

4    factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989).

5        In order to avoid dismissal for failure to state a claim a complaint must contain more than

6    "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause

7    of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007). In other words,

8    "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

9    statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim upon which the

10   court can grant relief has facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial

11   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

12   inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When

13   considering whether a complaint states a claim, the court must accept the allegations as true,

14   Erickson v. Pardus, 551 U.S. 89, 93-94 (2007), and construe the complaint in the light most

15   favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

## LEGAL STANDARDS

### I.    42 U.S.C. § 1983

A plaintiff may bring an action under 42 U.S.C. § 1983 to redress violations of "rights, privileges, or immunities secured by the Constitution and [federal] laws" by a person or entity, including a municipality, acting under the color of state law. 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must show that (1) a defendant acting under color of state law (2) deprived plaintiff of rights secured by the Constitution or federal statutes. Benavidez v. County of San Diego, 993 F.3d 1134, 1144 (9th Cir. 2021).

### II.   Linkage

Section 1983 requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Rizzo v. Goode, 423 U.S. 362, 370-71 (1976). Plaintiff may demonstrate that connection by alleging facts showing: (1) a defendant's

"personal involvement in the constitutional deprivation," or (2) that a defendant set "in motion a series of acts by others" or "knowingly refus[ed] to terminate a series of acts by others, which [the defendant] knew or reasonably should have known would cause others to inflict a constitutional injury." Starr v. Baca, 652 F.3d 1202, 1207-08 (9th Cir. 2011) (quotation marks and citation omitted

**PLAINTIFF'S FAC**

**I.    Factual Allegations**

Plaintiff is incarcerated at the California Medical Facility ("CMF") in Vacaville. The complaint names the following defendants: (1) Sircoya M. Williams, Acting CMF Warden; (2) Sara Vazquez, Acting Community Resource Manager; and (3) Chaim Zaklos, Jewish Chaplain. (ECF No. 1 at 1.) All defendants are sued in their official capacities only. (Id. at 6.) Plaintiff alleges defendant Williams oversees defendant Vazquez, who in turn supervises defendant Zaklos. (Id. at 3.)

Plaintiff alleges that defendant Zaklos approached plaintiff about an item plaintiff allegedly ordered. Plaintiff ordered a different item, but the company sent this item instead. Zaklos did not ask plaintiff if he had ordered the item but "informed and threatened" plaintiff with removal from the Halal meat/Religious Meat Alternative ("RMA") program for six months before he can reapply. (ECF No. 1 at 3.)

Plaintiff alleges Zaklos' actions interfered with his free exercise of dietary worship in violation of the First and Eighth Amendments. (ECF No. 1 at 3-4.) Plaintiff further claims that his injuries stem from Cal. Code Regs., tit. 15, § 3054.5, a provision that violates the Islamic laws of plaintiff's religion. (ECF No. 1 at 3-5.) Plaintiff states that § 3054.5 violates the Religious Land Use and Institutionalized Act (RLUIPA) as it is not the least restrictive means the State could have taken to not interfere with his free exercise of religion and there is no compelling state interest in this unconstitutional regulation. (Id. at 5.)

Plaintiff seeks the prospective injunctive relief of removing Cal. Code Regs., tit. 15, § 3054.5. (ECF No. 1 at 6.) Plaintiff also seeks court costs and punitive damages in the amount of $10,000.00. (Id.)

**DISCUSSION**

**I.      Plaintiff Cannot Pursue Damages Against Official Capacity Defendants**

The FAC seeks monetary damages but names defendants in their official capacities only. A suit against a state official in his or her official capacity is no different from a suit against the State itself. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Because neither § 1983 nor RLUIPA abrogate state sovereign immunity, official capacity damage claims like plaintiff's are barred by the Eleventh Amendment. See Flint v. Dennison, 488 F.3d 816, 825 (9th Cir. 2007) ("state officials sued in their official capacities . . . are not 'persons' within the meaning of § 1983 and are therefore generally entitled to Eleventh Amendment immunity."). Holley v. Cal. Dep't of Corr., 599 F.3d 1108, 1114 (9th Cir. 2010) ("The Eleventh Amendment bars [a prisoner's] suit for official-capacity damages under RLUIPA."). Accordingly, plaintiff may not proceed with his claim for damages.

**II.     Prospective Injunctive Relief**

All three defendants can hypothetically be sued in their official capacities for prospective injunctive relief under both § 1983 and RLUIPA. See Cornel v. Hawaii, 37 F.4th 527, 531 (9th Cir. 2022) ("[S]tate officials are 'persons' under § 1983 when sued for prospective injunctive relief."); Mayweathers v. Newland, 314 F.3d 1062, 1070 (9th Cir. 2002) (finding plaintiff's RLUIPA claim for injunctive relief "falls squarely within the Ex Parte Young exception to sovereign immunity and does not violate the Eleventh Amendment"). Thus, plaintiff's request to enjoin the RMA regulation is premised on a plausible legal theory when it comes to available relief.

However, as with the original complaint, the FAC seeks to enjoin the former version of Cal. Code Regs., tit. 15, § 3054.5. That provision was amended and recodified at § 3054.9, effective Jan. 1, 2023. Plaintiff does not specify when his injury occurred, and it is not clear whether the amended and recodified version of the regulation that plaintiff challenges (i.e., § 3054.9) presents the same problems that plaintiff complains of in the FAC. A request for injunctive relief does not lie if the plaintiff is no longer subject to the conduct sought to be enjoined. See Boulder Sign Co., LLC. v. City of Boulder City, Nevada, 382 F. Supp. 2d 1190,

1198 (D. Nev. 2005) (dismissing claims for injunctive relief because plaintiff "may not pursue injunctive relief against an ordinance no longer in existence").  Because it is not clear from the FAC what conduct plaintiff seeks to enjoin, he may not proceed on his claim for injunctive relief.

### III. Leave to Amend

Plaintiff may try to fix these problems by filing an amended complaint.  If plaintiff chooses to file an amended complaint, he must clarify which regulation he seeks to enjoin.  As this is the second time plaintiff has identified an outdated regulation, the undersigned has attached the current versions of §§ 3054.5 and 3054.9 for his review.  The relevant legal standards for plaintiff's substantive claims are also attached.

If plaintiff's amended complaint seeks damages against defendants in their individual capacities, he must allege in specific terms how each named defendant is involved.  Arnold v. Int'l Bus. Machs. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981).  For example, if plaintiff alleges he was actually denied a halal diet, plaintiff must allege who denied him a halal diet, when such denial occurred, and on what basis the denial was made.  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  Id.; Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Supervisors can be held liable for: "1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others."  Hyde v. City of Willcox, 23 F.4th 863, 874 (9th Cir. 2022).

Plaintiff is also informed that the court will not refer to a prior pleading in order to make his amended complaint complete.  Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  This is because, as a general rule, an amended complaint supersedes any prior complaints.  See Forsyth v. Humana, 114 F.3d 1467, 1474 (9th Cir. 1997) (the "'amended complaint supersedes the original, the latter being treated thereafter as non-existent'") (quoting Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967)).  Once plaintiff files an amended complaint, any previous complaint no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the

involvement of each defendant must be sufficiently alleged.

## CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's complaint fails to state a claim upon which relief may be granted, see 28 U.S.C. § 1915A, and will not be served.

2. Within thirty days from the date of service of this order, plaintiff may file an amended complaint that complies with the requirements of 42 U.S.C. § 1983, the Federal Rules of Civil Procedure, and the Local Rules. The amended complaint must bear the docket number assigned this case, **No. 2:24-cv-01518 SCR P,** and must be labeled **"Second Amended Complaint."**

3. Failure to file an amended complaint in accordance with this order will result in a recommendation that this action be dismissed pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

4. The Clerk of the Court is directed to send plaintiff a copy of the prisoner complaint form used in this district.

DATED: September 29, 2025

_/s/ Sean C. Riordan_
SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

Attachment A

This Attachment provides, for informational purposes only, the legal standards that may apply to your claims for relief. Pay particular attention to these standards if you choose to file an amended complaint.

**I.  Cal. Code Regs., tit. 15, § 3054.5 (effective Jan. 1, 2023)**

a) Religious kosher (RK) meals shall be available at designated institutions for incarcerated persons with a religious dietary need that cannot be met by another RPED option or by the mainline diet.

b) Incarcerated persons may request participation in the RK Diet Program in accordance with Title 15, section 3054.6.

c) Participating incarcerated persons shall be provided a diet of kosher-certified items, as approved by the Departmental Food Administrator.

d) All institutions shall adhere to standardized departmental certified RK diet menus and approved procedures for purchasing, preparing, and serving kosher meals, as approved by the Departmental Food Administrator.

e) Observance of Passover constitutes a single religious event, requiring kosher for Passover foods to be provided during the eight days of observance.

f) A Chaplain designated by the RRC shall annually review each institution's processes for the procuring, storing, and distributing RK meals, and shall provide a completed CDCR Form 3057 (Rev. 04/21), Religious Kosher Food Distribution Annual Review, which is incorporated by reference, for review by the Correctional Food Manager (CFM).

**II.  Cal. Code Regs., tit. 15, § 3054.9 (effective Jan. 1, 2023)**

a) The Religious Review Committee (RRC) shall determine Religious Personal Ethical Diet (RPED) compliance violations. The RRC shall initiate and oversee the audit of RPED participants for their compliance of all conditions listed on CDCR 3030-A, Religious Meat Alternate or Religious Kosher Agreement, and the CDCR 3030-V, Vegetarian and Plant-based Diet Request and Agreement. Any alleged compliance violation of the CDCR Form 3030-A or the CDCR Form 3030-V shall be reported using CDC Form 128-B (Rev. 04/74),

1

General Chrono, which is incorporated by reference, citing Title 15, section 3054.

(1) Any staff witnessing an RPED violation may initiate a CDC Form 128-B, General Chrono, and forward to the RRC.

(2) A first notice of violation of the RPED Program Agreement shall be documented using a CDC Form 128-B, General Chrono. The CDC Form 128-B, General Chrono, shall be dated the day the incarcerated person was notified of the violation.

(3) A second notice of violation within six months of the first notice of violation shall subject the incarcerated person to removal from the RPED program.

(4) Incarcerated persons who are issued a CDC Form 128-B first or second violation may grieve the CDC Form 128-B in accordance with Title 15, sections 3481 and 3482.

(5) Incarcerated persons who voluntarily withdraw from the RPED Program shall not be issued a violation notice dated on or after the date of their withdrawal from the program.

b) Incarcerated person participants in the Religious Meat Alternate (RMA) and Religious Kosher (RK) diet programs are subject to audit for all terms and conditions listed on CDCR Form 3030-A. The RRC designee shall prepare the audit packet and forward to any Chaplain, who shall, within 30 calendar days, consult with the incarcerated person, giving the incarcerated person the opportunity to respond to the allegation(s) of RPED agreement compliance violations, and return the completed audit packet to Community Resources Manager for signature and distribution to C-File, Incarcerated Person, RRC and CRM.

(1) Incarcerated persons shall not be automatically issued a violation notice based solely on the fact that they were flagged during the RPED Audit.

(2) The Chaplains shall make the final determination as to whether or not the incarcerated person shall receive a CDC Form 128-B for violating the CDCR Form 3030-A, Religious Meat Alternate or Religious Kosher Agreement.

(3) The Chaplain shall complete the CDC Form 128-B with the date of interview and shall sign as the interviewer, not as the issuer. The Chaplain shall document on the CDC Form 128-B if the incarcerated person refuses to be interviewed.

c) Incarcerated person participants in the Vegetarian and Plant-Based diet programs are subject

2

1  to all terms and conditions listed on CDCR Form 3030-V. Any alleged compliance violation
2  may be initiated by any staff using CDC Form 128-B, General Chrono, citing Title 15, section
3  3054. The issuer of the CDC Form 128-B or a representative of the RRC shall consult with
4  the incarcerated person, giving the incarcerated person the opportunity to respond to the
5  allegation(s) of RPED agreement compliance violations. The CDC Form 128-B shall be
6  distributed to C-File, Incarcerated Person, Issuer, RRC and CRM. The RRC shall document
7  the CDC Form 128-B in the IMTS.

8  d) The RRC shall make the final determination of continuing eligibility and complete a CDCR
9  Form 3030-C (Rev. 07/24), Religious Personal Ethical Diet Program Agreement -- Notice of
10  Non-Compliance, which is incorporated by reference. A copy of the completed CDC Form
11  128-B with attachments and CDCR Form 3030-C shall be scanned into Electronic Records
12  Management Systems and a copy provided to the incarcerated person.

### III.     First Amendment Free Exercise

The First Amendment is implicated where state actions substantially burden a prisoner's practice of religion by preventing him from engaging in conduct that he sincerely believes is consistent with his faith, whether or not such conduct is "central to" or "mandated by" his faith." Shakur v. Schriro, 514 F.3d 878, 884 (9th Cir. 2008) (explaining that "it is the sincerity of [plaintiff's] belief rather than its centrality to his faith that is relevant to the free exercise inquiry"). "A substantial burden ... place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." Jones v. Williams, 791 F.3d 1023, 1031 (9th Cir. 2015).

Nevertheless, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). An alleged infringement of a prisoner's free exercise rights is therefore "valid if it is reasonably related to legitimate penological interests." Id. at 349. To assess this validity, the Supreme Court has instructed courts to consider: (1) whether there is a "rational connection between the prison regulation and

the legitimate governmental interest put forward to justify it"; (2) whether there are "alternative means of exercising the right"; (3) whether and how "accommodation of the asserted constitutional right ... impact[s] ... guards and other inmates"; and (4) the "existence of obvious, easy alternatives." Turner v. Safley, 482 U.S. 78, 89-90 (1987) (internal quotation marks and citations omitted).

### IV. Religious Land Use and Institutionalized Persons Act of 2000 ("RLUPIA")

RLUIPA prohibits prison officials from substantially burdening a prisoner's "'religious exercise unless the burden furthers a compelling governmental interest and does so by the least restrictive means.'" Alvarez v. Hill, 518 F.3d 1152, 1156 (9th Cir. 2009) (internal quotations and citations omitted).  The plaintiff bears the initial burden of demonstrating that an institution's actions have placed a substantial burden on plaintiff's free exercise of religion.  To state a cognizable claim under RLUIPA, plaintiff must specify how the defendant denied him access to religious services.  In this regard, plaintiff must link any RLUIPA claim to the defendant's specific conduct.  "A RLUIPA plaintiff may only sue defendants in their official capacities for prospective injunctive relief." Jones v. Slade, 23 F.4th 1124, 1140 n.3 (9th Cir. 2022).

Monetary damages are not available under RLUIPA against either official capacity or individual capacity defendants.  Damages are not available under RLUIPA against state officials sued in their individual capacities.  See Jones v. Williams, 791 F.3d 1023, 1031 (9th Cir. 2015) ("RLUIPA does not authorize suits for damages against state officials in their individual capacities because individual state officials are not recipients of federal funding and nothing in the statute suggests any congressional intent to hold them individually liable.").  Nor does RLUIPA authorize damages against the state itself or official capacity defendants, as an official capacity suit is tantamount to a suit against the state itself.  See id.

### V. Eighth Amendment Conditions of Confinement

In order for a prison official to be held liable for alleged unconstitutional conditions of confinement, the prisoner must allege facts that satisfy a two-prong test. Peralta v. Dillard, 744 F.3d 1076, 1082 (9th Cir. 2014) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)).  The first prong is an objective prong, which requires that the deprivation be "sufficiently serious." Lemire

v. Cal. Dep't of Corr. & Rehab., 726 F.3d 1062, 1074 (9th Cir. 2013) (citing Farmer, 511 U.S. at 834). In order to be sufficiently serious, the prison official's "act or omission must result in the denial of the 'minimal civilized measure of life's necessities." Lemire, 726 F.3d at 1074. The objective prong is not satisfied in cases where prison officials provide prisoners with "adequate shelter, food, clothing, sanitation, medical care, and personal safety." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quoting Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982)). "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. Id. at 732 ("[m]ore modest deprivations can also form the objective basis of a violation, but only if such deprivations are lengthy or ongoing"). Rather, extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Farmer, 511 U.S. at 834; Hudson v. McMillian, 503 U.S. 1, 9 (1992). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson, 217 F.3d at 731.

The second prong focuses on the subjective intent of the prison official. Peralta, 774 F.3d at 1082 (9th Cir. 2014) (citing Farmer, 511 U.S. at 837). The deliberate indifference standard requires a showing that the prison official acted or failed to act despite the prison official's knowledge of a substantial risk of serious harm to the prisoner. Id. (citing Farmer, 511 U.S. at 842); see also Redman v. Cnty. of San Diego, 942 F.2d 1435, 1439 (9th Cir. 1991). Mere negligence on the part of the prison official is not sufficient to establish liability. Farmer, 511 U.S. at 835.